UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LARRY W. LEWIS,                             Case No. 1:09-cv-569

        Plaintiff,                   Chief Judge Susan J. Dlott
                                            Magistrate Judge J. Gregory Wehrman

vs.

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, *et al.*,

      Defendants.

**REPORT AND RECOMMENDATION[1] THAT:
(1) DEFENDANT CENTRAL STATES' MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (Doc. 16) BE GRANTED; (2) PLAINTIFF'S MOTION TO
SET ASIDE THE ADMINISTRATIVE DECISION (Doc. 24) BE DENIED; (3)
DEFENDANT DURO BAG'S MOTION TO DISMISS (Doc. 25) BE DENIED AS MOOT;
(4) DEFENDANT INTERNATIONAL BROTHERHOOD OF TEAMSTERS' MOTION
FOR SUMMARY JUDGMENT (Doc. 32) BE GRANTED IN PART;
and (5) THIS CASE BE CLOSED**

This civil action is before the Court on Defendant Central States, Southeast and Southwest

Areas Pension Fund's motion for judgment on the administrative record (Doc. 16) (which Defendant

Duro Bag joins (Doc. 25)); Plaintiff's motion to set aside the administrative decision (Doc. 24) and

responsive memoranda (Docs. 26, 31); Defendant Duro Bag's motion to dismiss (Doc. 25) and

responsive memoranda (Docs. 28, 30); and Defendant International Brotherhood of Teamsters'

("IBT") motion for summary judgment (Doc. 32) and responsive memoranda (Docs. 35, 36).

## I.    BACKGROUND FACTS

Central States is an ERISA regulated employee pension benefit plan, ERISA, the Employee

Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.* Plaintiff has made a claim

for additional contributory credit under Central States' Plan, seeking a higher retirement benefit.

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

Plaintiff alleges that he became an employee of Defendant Duro Bag Manufacturing Company ("Duro Bag") in June of 1976 when he began work as a truck driver and continued to work for Duro Bag until he retired on December 31, 2003.  (Doc. 1 at 8, 12).  Because he was a truck driver, Plaintiff alleges that he worked under the terms of a collective bargaining agreement ("CBA") entered between Defendant International Brotherhood of Teamsters ("IBT") and Duro Bag, which required Duro Bag to make pension contributions to Central States on his behalf as a regular driver.  (*Id*. at 17).

Plaintiff alleges that Duro Bag was required to pay pension contributions to Central States for him beginning in July of 1976 because he became a regular employee (because he worked 30 cumulative days within the 90 day calendar period after he was hired).  (Doc 1 at 12).  Plaintiff alleges that when his probationary period as a casual driver ended in July of 1976, Duro Bag should have started making contributions to Central States for him.  (*Id*. at 13, 15).

Plaintiff alleges that when he decided to retire on December 31, 2003, Central States denied him full retirement benefits because it calculated his total contributory credit at 23.456 years.[2] Central States did not grant him any contributory credit for Duro Bag employment until November of 1977.  Plaintiff alleges that Central States thereby improperly failed to count his credit for Duro Bag employment from July 1976 to November 1977.  (Doc. 1 at 17).  Plaintiff alleges that he exhausted administrative appeals with Central States in support of his claims for additional contributory credit.  (*Id*. at 18).

Central States claims that Plaintiff was not entitled to any additional contributory credit for his employment at Duro Bag between July of 1976 and November of 1977, because Plaintiff never

---

[2]  Between 2001 and 2003 Central States corrected the administrative findings and raised the computed work history from 23.456 years to 24.6 years.

established regular full-time employee status under the CBA anytime in 1976. Central States alleges that Plaintiff was a casual employee in 1976 and contributions were not required to be paid under the CBA by Duro Bag for him until he was hired for full-time employment in June of 1977, and then completed the CBA's required probationary period – so contributions started for him in November of 1977.

### A.    The Pension Fund

Central States is a not-for-profit Taft-Hartley trust regulated by ERISA. 29 U.S.C. § 1001, *et seq*. It is a multiemployer employee pension benefit plan as defined in 29 U.S.C. § 1002(2)(A). It is administered by a board of trustees with equal representation from management and labor. (Doc. 16, Ex. 1 at 5).

The Trustees administer the Plan to provide retirement benefits to covered employees in the Teamster Industry, who earn pension credits when their employers pay contributions (at rates stated in the CBA) to the Pension Fund for retirement benefits. Central States is a tax-qualified trust. Contributions made to it are deductible by the employers who make them and do not constitute income to the trust. It has no shareholders and earns no profits. It is not an insurance company. A decision of the Trustees denying a Plan benefit does not result in savings for investors, it only protects Fund assets for all participants and beneficiaries. Because the Fund is a non-profit trust, a payment of benefits to any one person, that is not allowed by the terms of the Plan, reduces the assets available to pay allowable benefits. (Doc. 16, Ex. 1 at 6).

Because Central States is a non-profit trust, its Trustees act with no conflict of interest. They are required by the fiduciary duties imposed upon ERISA trustees by § 4.04(a)(1)(D) to discharge their duties "in accordance with documents and instruments governing the Plan." 29 U.S.C. § 1104(a)(1)(D). Allowing benefits to be paid in violation of the terms of the Plan to persons who do

not qualify could subject the Trustees to fiduciary liability.

### B.    Trust Agreement

The Trustees derive discretionary authority to operate and administer the Pension Fund and decide benefit claims from the Trust Agreement.  It states:

> All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund.

(Doc. 16, Ex. 1A at 15-16).

The Trust Agreement defines Employee to mean, in relevant respects, "A person who is employed under the terms and conditions of a collective bargaining agreement entered into between an Employer as herein defined and a Union as herein defined, and on whose behalf payments are required by such collective bargaining agreement or applicable law to be made to the Fund by the Employer."  (Doc. 16, Ex. 1A at 2).

The Trust Agreement (Article I, § 1) defines Employer to mean, in relevant respects, "any employer who is bound by a collective bargaining agreement with the Union."  It also states, in relevant part, "Each Employer shall remit continuing and prompt contributions to the Trust Fund as required by the applicable collective bargaining agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority."  (Doc. 16, Ex. 1A at 2, 7).

-4-

The Trust Agreement (Article IV, § 1) grants the Trustees the power to control and manage the operation and administration of the trust in accordance with applicable law.  It states, "The Trustees are vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund."  The Trust Agreement (Article IV, § 17) states that the Trustees have the power to construe the provisions of the Trust Agreement and "any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers."  The Trustees are vested with discretionary and final authority construing Plan Documents of the Pension Fund.  (Doc. 16, Ex. 1A at 9, 11, 14-15).

The Trust Agreement (Article IV, § 16) requires that the Trustees use and apply the Trust Fund to pay retirement benefits to eligible employees "in accordance with terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder by the Trustees."  (Doc. 16, Ex. 1A at 14).

The Trust Agreement (Article XIV, § 7) states, in relevant part, that it will be construed according to the laws of the State of Illinois and that, in all actions taken by the Trustees to enforce its terms, "the Ten-Year Statute of Limitation applicable to actions on written contracts in the State of Illinois shall apply."  (Doc. 16, Ex. 1A at 26).

### C.    The Plan Document

The Central States Pension Fund Plan Document (the "Plan") describes pension benefits available to Central States' participants.  It contains rules for the payment of retirement benefits which may be earned by participants based upon credit for Teamster employment.  (Doc. 16, Ex. 1B at 4, 8).

The Plan defines various relevant terms.  For instance, it states that a Collective Bargaining Agreement means "a written agreement between a Union and a Contributing Employer requiring

Employer Contributions to the Pension Fund on behalf of all Employees whose classification of work is covered by the Collective Bargaining Agreement." (Doc. 16, Ex. 1B at 3). Contributions are what "a Contributing Employer is required to make to the Pension Fund, based upon either a Collective Bargaining Agreement or an applicable law. . . at rates established by the terms of a Collective Bargaining Agreement." (*Id.* at 4). Contributory Service is service "for any employment with a Contributing Employer required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement." (*Id*. at 5-6).

The Plan describes the Benefit Claims and Appeals Procedures whereby a claimant for plan benefits may appeal the denial of any benefit to the Trustees. The appeals procedures provide a two step review. During the administrative review process, a claimant for Plan benefits has a right to make a personal appearance and has a right to inspect documents from his claim file. (Doc. 16, Ex. 1B, Appx. B, at B-6).

The Plan states, "All decisions by the Board of Trustees, including all rules and regulations adopted by the Board of Trustees, all amendments of the Trust Agreement and this Pension Plan by the Board of Trustees and all interpretations by the Board of Trustees of any of said documents, shall be binding upon all parties to the Trust Agreement, the Union, each Contributing Employer, all individuals claiming benefits pursuant to this Pension Plan or any amendment thereof and all other individuals engaged in any transaction with the Pension Fund." (Doc. 16, Ex. 1B at 68). The burden of proof in demonstrating eligibility for any benefit, and the extent to which a claimed benefit is covered or payable in accordance with Pension Plan, "shall at all times be the responsibility of the claimant." (*Id*. at Appx. B, B-6).

### D.    Relevant Undisputed Material Facts

Plaintiff has earned 24.6 years of contributory credit with Central States. Plaintiff claims that

he is entitled to additional contributory credit because Duro Bag, during the period of July 1976 through October 1977, should have paid contributions for him. (Doc. 16, Ex. 1 at 2). Plaintiff asserted his claims for additional contributory credit through Central States' mandatory administrative appeals process. The Trustees of the Pension Fund first considered his claims on October 13, 2004. They then reconsidered his claims on February 13, 2007.[3] (*Id*.) The Trustees unanimously decided on February 13, 2007, to reject Plaintiff's claim that additional contributions were owed for him from Duro Bag for periods prior to October 30, 1977, but they also approved a determination that additional contributions were owed on his behalf from Branch Motor Express ("Branch") during 1976 and 1977 (17 daily contributions in 1976 and 13 daily contributions in 1977). (*Id*. at 3). The issue to be decided by this Court is whether the Trustees acted arbitrarily and capriciously when they denied Plaintiff's final administrative appeal on February 13, 2007.

The administrative record of Plaintiff's appeal reflects the basis and factual background for the Trustees' decision that Plaintiff did not demonstrate that he was entitled to any additional contributory credit with Central States because no contributions were owed on his behalf from Duro Bag prior to October 30, 1977. The Minutes also contain the basis for Trustees' decision to approve that additional contributions were owed for him from Branch during 1976 and 1977 (17 daily contributions in 1976 and 13 daily contributions in 1977). (Doc. 16, Ex. 1D at 11).

On October 7, 1986, Plaintiff filed an Employment Information form requesting information about the years of credited service he had earned toward a pension benefit. On the form, Plaintiff

---

[3] Plaintiff exhausted the administrative appeals process for additional contributory credit under Central States' Pension Plan when his reopened appeal was considered by the Trustees on February 13, 2007. (Doc. 16, Ex. 1D).

said he worked at Duro Bag from June 26, 1976 to March 1, 1985.  (Doc. 16, Ex. D at 161).  On October 16, 1986, Odell Hinkle of Teamster Local Union 100 wrote Central States and said Duro Bag went out of business in its area effective September 27, 1986.  Mr. Hinkle attached a list of affected employees and asked Central States to advise the employees of their pension contributions.  Plaintiff was on the list.  (*Id*. at 162-63).

On December 11, 1986, Central States wrote Plaintiff stating, "You became a participant of the Fund in November, 1977.  You have 8.800 of contributory credit for your employment with Duro Bag MFG and Trans Fleet, from 1977 to 1986."  (Doc. 16, Ex. 1D at 159).

There was no response from Plaintiff.  Then, on March 23, 2001, Local Union 100 wrote Central States requesting that it review Plaintiff's credit for 1976 and 1977.  The Union provided an itemized statement of earnings from Social Security for Plaintiff. (Doc. 16, Ex. 1D at 153-58).

On May 15, 2001, Central States wrote Plaintiff informing him that contributions were received on his behalf from November 1977 through February 1985 for his Duro Bag employment.  The letter stated that if Plaintiff questioned whether additional contributions were owed for 1976 and 1977, he would need to provide further documentation.  (Doc. 16, Ex. 1D at 151).

On September 27, 2002, Plaintiff called Central States and asked about self-contributions for 2001.  On November 11, 2002, Central States informed Plaintiff the cost of self-payments for 2001.  (Ex. D, at 146, 150).  On December 5, 2002, Local Union 100 sent Plaintiff's check for self-contributions.  On February 4, 2003, Central States informed Plaintiff that it had received his self-contributions for 2001 and, at that point, he had 22.456 years of contributory service credit.  (Doc. 16, Ex. 1D at 144-45).

On December 31, 2003, Central States received an Application for a Retirement Pension Benefit from Plaintiff dated December 30, 2003, on which Plaintiff represented that he was a driver

at Duro Bag between 1975 and 1986.  On February 4, 2004, Central States advised Plaintiff that he would be eligible for a 23 Year Contributory Credit Pension.  (Doc. 16, Ex. 1D at 141-43).

On March 4, 2004, Local Union 100 wrote Central States and submitted documents on Plaintiff's behalf regarding his claim to additional credit for 1977.  The Union attached an August 14, 2001 statement from Donna S. Krebs, Payroll Manager of Duro Bag, stating that Plaintiff was hired on June 2, 1976 as a casual trucker and on May 25, 1977 he became a full-time, over-the-road truck driver.  Also attached was a Social Security statement of earnings for Plaintiff and a union dues ledger showing Plaintiff became a union member and began paying dues effective November 1976.  Also enclosed was a copy of the CBA between Local Union 100 and Duro Bag for September 1976 to February 28, 1979.  (Doc. 16, Ex. 1D at 121-140).

On April 7, 2004, Central States wrote Plaintiff informing him he had 23.456 years of contributory service credit but no additional contributions were owed on his behalf for 1976 or 1977.  Plaintiff was advised of his right to appeal the determination.  (Doc. 16, Ex. 1D at 115).

On April 26, 2004, Plaintiff filed a Pension Benefit Appeal form.  He attached a statement from a co-worker, Joseph E. Underwood Sr.  Mr. Underwood stated that he worked at Duro Bag from 1968 to 1986 and was a union steward.  He further stated that Plaintiff was hired in May of 1976 and worked as a city driver until October 1976, when he was laid-off due to a strike which lasted until January 1977.  In January 1977, Plaintiff was put back to work as an over-the-road driver and he worked in that capacity until the company dissolved in 1986.  (Doc. 16, Ex. 1 at 111-14).

On May 27, 2004, Central States' Benefits Claim Appeals Committee reviewed and denied Plaintiff's appeal for contributions by Duro Bag prior to November of 1977.  On June 21, 2004, Central States wrote Plaintiff and advised him that the CBA did not require contributions to Central States for extra, casual, temporary, and part-time employment.  The CBA stated that "newly hired

drivers must work thirty cumulative work days within any ninety calendar day period before being considered a regular employee." "Based on the information you have submitted, we cannot determine when you completed your probationary period."  (Doc. 16, Ex. 1D at 107, 109).

On July 15, 2004, Plaintiff submitted an appeal to the Trustees, claiming that Central States' records did not accurately reflect his full-time employment at Duro Bag from 1976 through 1977. Plaintiff submitted his social security itemized statement of earnings for years including 1976 and 1977, and he also submitted the April 5, 2004 statement from Mr. Underwood.  (Doc. 16, Ex. 1D at 97-106).

The Trustees considered and denied Plaintiff's appeal on October 13, 2004.  They reviewed the evidence in the record, including the fact that on September 27, 2004, Plaintiff submitted an additional document from Duro Bag showing that he was hired as a casual driver on June 2, 1976 and became a full-time driver on May 25, 1977.  The Minutes pointed out that all of Plaintiff's 1976 wages were earned at Duro Bag during an eight week period of June and July of 1976.  (Doc. 16, Ex. 1D at 85-96).

On October 18, 2004, Central States' Benefit Director, Albert E. Nelson, wrote Plaintiff and advised him that the Trustees denied his appeal because he did not establish that Duro Bag was required to make contributions for him prior to October 30, 1977.  The CBA in effect for 1976 through 1979 required contributions for full-time seniority employees and specifically excluded contributions on behalf of extra, casual, temporary and part-time employees.  Mr. Nelson stated, that "[b]ased on the information provided from Duro Paper Bag Manufacturing Company, you began your employment on June 2, 1976 as a <u>casual</u> employee, and on May 25, 1977, you became a full-time employee.  The Seniority Article of the Agreement required a newly hired driver to work 30 cumulative days within a 90 calendar day period to obtain seniority.  Therefore, after careful review

of all information in file, and absent any contemporaneously prepared documentation indicating (1) your seniority date, (2) the date on which you completed your 30th day worked within a 90 calendar day period, and (3) the specific weeks in which you worked after completing your 30th day worked in a 90 calendar day period, the Trustees determined you have not established that Employer Contributions were owed on your behalf for periods prior to October 30, 1977." (Doc. 16, Ex. 1D at 83).

On October 21, 2004, Central States wrote Plaintiff and told him that in response to a request by his wife for information about self-contributions in 2003, he could establish 1.000 year of contributory service credit in 2003, if he made self-contributions. On February 18, 2005, Central States acknowledged receipt of Plaintiff's self-contributions for 2003 and told him, that at that point he had a total of 24.456 years of contributory service credit. (Doc. 16, Ex. 1D at 78-79).

On December 21, 2005, the IBT wrote Mr. Nelson and asked him to review Plaintiff's appeal again in light of new evidence. The IBT said it was forwarding letters from Duro Bag, copies of his pension history and a social security itemized statement of earnings. On January 6, 2006, Mr. Nelson wrote the IBT and stated that Central States received its correspondence but did not receive the letters from Duro Bag. (Doc. 16, Ex. 1, Ex. D, at 76-77).

On January 13, 2006, the IBT wrote Mr. Nelson and enclosed August 17, 2005 and August 12, 2005 letters from Duro Bag. Both letters were signed by Donna Krebs. The August 17, 2005 letter stated, " I do not have access to a Teamster's contract covering 1976 or 1977, but I would assume the probationary period for them would be the same as our other union employees. During that period, the probationary period for becoming a member in good standing of the union was thirty days. Based on that assumption, Plaintiff would have completed his probationary period with the Teamsters by the end of July, 1976, since he worked for eight weeks." The Krebs' letter of August

-11-

12, 2005 stated, "The Payroll records for Larry W. Lewis indicate that he was hired on June 2, 1976 and worked 8 weeks during June and July of 1976.  His W-2 payroll earnings for 1976 were $2,050.70. The Payroll records also indicate that he worked for the company in 1977.  His hourly rate was $9.35 and he earned $10,788.72."  (Doc. 16, Ex. 1D at 73-75).

On January 24, 2006, Mr. Nelson wrote Plaintiff and stated that the seniority article of the CBA for the periods of 1976 and 1977 required a newly-hired driver to work 30 cumulative days within 90 calendar days to obtain seniority.  Mr. Nelson explained that in reviewing Plaintiff's Duro Bag wages (reported on his social security itemized statement of earnings) for 1976 and 1977, it did not appear that Plaintiff satisfied his probation period until the beginning of the 4th quarter of 1977, which would not provide him with any additional contributory service credit.  Mr. Nelson's letter stated, "However, if you could provide me with contemporaneously prepared documentation indicating your seniority date, the date on which you completed your 30th day worked within a 90 calendar day period, and the specific weeks in which you worked after completing your 30th day worked in a 90 calendar day period, I will then once again review your file to determine if any additional pension contributions are owed on your behalf for your employment with Duro Bag Manufacturing Company prior to October 30, 1977."  (Doc. 16, Ex. 1 at 71-72).

On February 28, 2006, Plaintiff sent information to Mr. Nelson by facsimile, including a letter from Local Union 100 to Plaintiff dated February 14, 2006, stating that Branch was required, per a CBA, to pay contributions on behalf of all full-time employees to begin 30 calendar days after their hire date and contributions on behalf of all casual employees for each day worked beginning in 1977.  Also, attached was the pension article of the CBA referred to by Plaintiff and his social security itemized statement of earnings for 1976 and 1977.  (Doc. 16, Ex. 1D at 65-70).

On March 13, 2006, Mr. Nelson wrote Plaintiff and advised him that a sub-committee of

Trustees reviewed his file and the information he submitted and determined that there was inadequate information to provide additional credit to him in 1976 and 1977, for his employment with Duro Bag.  Mr. Nelson said, "As stated in my previous letter dated January 24, 2006, it was found that the Seniority Article of the Collective Bargaining Agreement for the period covering the years 1976 and 1977 required a newly hired driver to work 30 cumulative days within a 90 calendar day period to obtain seniority.  However, in reviewing your wages (as reported on your itemized statement of earnings report prepared by the Social Security Administration) for the years 1976 and 1977 for your employment with Duro Bag Manufacturing Company, it does not appear as though you satisfied your probation period until the beginning of the 4th quarter of 1977, which would not provide you with additional contributory service credit."  (Doc. 16, Ex. 1D at 62).

On March 28, 2006, the IBT wrote Mr. Nelson and asked him to review Plaintiff's employment at Branch during the period of 1976 and 1977, because the CBA between Local Union 100 and Branch called for pension contributions on behalf of full-time employees to begin 30 days after their hire date and on behalf of casual employees for each day worked beginning in 1977. (Doc. 16, Ex. 1D at 60).

On July 12, 2006, the IBT wrote Mr. Nelson and submitted the pension article of the CBA between Duro Bag and Local Union 100 and the August 12, 2005 letter from Donna Krebs indicating that Plaintiff was hired by Duro Bag on June 2, 1976 and worked eight weeks during June and July of 1976.  The Union asked Central States to look into Plaintiff's contention that he worked 30 cumulative days in June and July of 1976.  (Doc. 16, Ex. 1D at 55-57).

On August 3, 2006, Mr. Nelson wrote Plaintiff regarding the IBT's letter of July 12, 2006 and stated, "In reviewing all information, it was determined that your hourly wage rate (per company letter dated August 12, 2005) does not agree with the Collective Bargaining Agreement.

-13-

Additionally, according to the letter dated August 12, 2005 from Ms. Karen Krebs (sic), Payroll

Manager, Duro Bag Manufacturing Company, she refers to your payroll records; therefore, I would

recommend that you try to obtain these payroll records for our review.  If you are unable to do so,

our Field Audit Department can set up an appointment to have a member of their staff review these

records."  (Doc. 16, Ex. 1D at 54).

On August 22, 2006, Plaintiff sent a letter to Mr. Nelson from Donna Krebs, dated August 18,

2006, regarding Plaintiff, which stated, "I have recently acquired Duro Bag union contracts with the

Teamsters for 1976-1979 and 1979-1982.  After reviewing the rates of pay in the contract and his

payroll history card, it would appear that no rates were written in until the 1979 rate was added at

a later date, probably in 1980.  It is my belief that the rate of $9.35 written on his payroll card was

in error and should have been the contract rate of $9.55.  There is also information on his card which

would indicate that he was paying union dues each year starting in 1976."  (Doc. 16, Ex. 1D at 52-

53).

On October 11, 2006, the IBT wrote Mr. Nelson, and attached a letter from Donna Krebs

dated October 4, 2006 which stated, "In my last correspondence dated August 18, I stated that it was

my conclusion that Mr. Lewis was paid by Duro Bag according to the Teamsters contract in force

at the time of his employment.  That would mean he was paid an hourly rate of $7.70 in 1976, $8.20

in 1977, and $8.70 in 1978.  He would have been paid $9.55 per hour in 1979, not the $9.35 that is

written on his payroll card. I believe the $9.35 was written in error when added to his card at a later

date. Even though no rates were actually recorded on his payroll history card, there is no reason to

believe he would have been paid otherwise, since he was a member of the Teamsters union."  (Doc.

16, Ex. 1D at 50-51).

On November 14, 2006, Mr. Nelson wrote Plaintiff in reference to the October 11, 2006

-14-

correspondence from the IBT and stated, "Based on the October 4, 2006, letter from Duro Bag Manufacturing Company they did not provide any new information, which would allow us to grant you any additional credit in 1976 and 1977. As outlined in my January 24, 2006 letter, I asked you to provide me with contemporaneously prepared documentation indicating your seniority date, the date on which you completed your 30th day worked within a 90 calendar day period, and the specific weeks in which you worked after completing your 30th day worked in a 90 calendar day period. As of this date, you have not been able to provide me with this information and your status remains unchanged. Therefore, at this time I am asking you to advise me how you would like me to continue with the processing of your file, as this issue was already presented and denied by the to (sic) the Trustees at its October 13, 2004 meeting." (Doc. 16, Ex. 1D at 49).

The IBT wrote Mr. Nelson on November 22, 2006 and asked him again to look into Plaintiff's inquiry in light of the Union's letter of October 11, 2006 and the Krebs' letter. (Doc. 16, Ex. 1D at 48). On December 27, 2006, Mr. Nelson wrote Plaintiff and told him, in light of the recent information submitted on his behalf by the IBT, Central States would re-present his appeal to the Trustees for reconsideration at their February 13, 2007 meeting. (*Id*. at 45).

On January 4, 2007, Central States' staff (Michael Walker) reviewed the facts of Plaintiff's appeal regarding his employment at Duro Bag and stated, "I do not believe that Mr. Lewis has demonstrated that he was serving a probation period during June and July 1976. I believe that the documentation indicates that Plaintiff was a casual employee during June and July 1976. Therefore, he was required to serve his probation period after being hired for regular full-time employment in May 1977." Mr. Walker pointed out that Plaintiff's co-worker, Joseph Underwood, had 52 weeks of contributions made for him in 1976 and 53 weeks of contributions in 1977, and there was no record of Mr. Underwood making self-contributions for either year, nor is there any indication of

a strike during the period of October 1976 through January of 1977.  Mr. Walker stated that Mr. Underwood's statement that Plaintiff worked until the strike in October of 1976 was not credible. Other information indicates that Plaintiff worked only eight weeks during June and July of 1976. (Doc. 16, Ex. 1D at 43-44).

On January 10, 2007, Michael Walker wrote Plaintiff regarding a recent telephone conversation.  Plaintiff told Mr. Walker that he was hired by Branch for full-time employment as a dock worker and not a casual worker, although Plaintiff did not recall his hire date or termination date.  In regards to Plaintiff's Duro Bag employment, Mr. Walker pointed out that Plaintiff contended that he was hired as a regular full-time employee and worked as a driver at Duro Bag from May until October of 1976, fulfilling his probationary period, and was laid-off with the rest of the employees due to strike.  But Mr. Walker noted that other information indicated that Plaintiff worked only eight weeks in 1976 (the months of June and July of 1976).  Contribution reports filed by Duro Bag show that it paid contributions for every week for 18 of 19 drivers during the period of October 1976 through January 1977 and Duro Bag added two new drivers effective October 10, 1976 and two new drivers on December 12, 1976.  Additionally, Duro Bag's report showed that a driver was on short term leave of absence between May 16, 1976 through June 26, 1976, which corresponds closely to the eight week period that Plaintiff worked at Duro Bag during 1976.  Mr. Walker pointed out that two drivers were terminated during this period (one on August 1, 1976 and another October 31, 1976), but, Plaintiff, who claimed to be a full-time employee who completed his probationary period, did not work in August, September, or October of 1976; and, although Plaintiff contended he returned to work when the strike ended in 1977, the wages Plaintiff earned during the first two quarters of 1977 (26 weeks) were less than the wages he earned during his eight weeks of work of 1976.  Mr. Walker pointed out that the payroll card from Duro Bag indicates

Plaintiff became a full-time employee on May 25, 1977 as a road driver, but Plaintiff contended that he continued to be a city driver until August of 1977, when a road driver position became available. (Doc. 16, Ex. 1D at 16-17).

Mr. Walker asked Plaintiff to provide explanations to his specific questions by January 26, 2007 so that his response could be considered by the Trustees when they reviewed his appeal on February 13, 2007. On February 1, 2007, Plaintiff faxed letters from Donna Krebs dated January 26, 2007 and January 31, 2007, which provided no new information. He provided no answers to Mr. Walker's specific questions. In a February 5, 2007 conversation, Plaintiff advised Mr. Walker that his submission was complete. (Doc. 16, Ex. 1D at 22).

The Trustees reconsidered Plaintiff's appeal on February 13, 2007 and, based upon the facts in the administrative record, unanimously rejected his request that additional contributions were owed on his behalf from Duro Bag for periods prior to October 30, 1977, but the Trustees approved a determination that additional contributions were owed on Plaintiff's behalf from Branch during 1976 and 1977. (Doc. 16, Ex. 1D at 1-8).

On February 19, 2007, Mr. Nelson wrote Plaintiff and explained the Trustees' decision. The Trustees determined that Plaintiff did not demonstrate that Duro Bag was required to make contributions for him for periods prior to October 1977, but they also decided to credit Plaintiff with 17 daily contributions for 1976 and 13 daily contributions for 1977 based upon his employment with Branch. However, the additional contributions credited for his employment in 1976 and 1977 at Branch were insufficient to establish contributory service credit for 1976 and adding 13 daily contributions to the 9 weekly contributions paid for him by Duro Bag in 1977 did not enable Plaintiff to establish any contributory service credit in 1977. (Doc. 16, Ex. E).

Mr. Nelson also explained that the Trustees found that the evidence in the administrative

record did not demonstrate that he became a regular seniority employee before October 30, 1977, so Duro Bag was not required to make contributions on his behalf prior to October 30, 1977. No contemporaneously prepared documents showed his seniority date or the date in which he completed the probationary period (30 days work within 90 calendar days, following the date on which he was hired for regular employment)[4] or the specific weeks in which he worked after completing his probationary period. Plaintiff never explained why he did not work in August, September, or October of 1976 (periods before the strike) and how the company added four new regular seniority drivers during the period that Plaintiff did not work (August 19, 1976 through December 1976). Plaintiff failed to explain why he worked so little from January through June 1977. Other correspondence from Donna Krebs verified that Plaintiff did not become a full-time employee until May 27, 1977, and, Mr. Nelson noted that Central States had advised Plaintiff specifically on December 11, 1986, that he did not become a plan participant until November of 1977, but Plaintiff waited more than 14 years after that letter to raise his claim for contributions for periods before November 1977. (Doc. 16, Ex. 1E).

## II. ANALYSIS

### A. CONSTRUED LMRA CLAIMS AGAINST IBT AND DURO BAG

Plaintiff's Complaint asserts claims against IBT and Duro Bag "under ERISA and under Ohio law." Doc. 1, Complaint at ¶31, 40. Plaintiff specifically alleges that Duro Bag and IBT "failed to properly record and calculate Plaintiff's time as a regular employee from July 1976 to November 1977." *Id.* at ¶20, 42. Plaintiff similarly alleges that Defendant Duro Bag failed "to properly provide contributions to Defendant Central States." *Id.* at ¶33. Plaintiff's claims against

---

[4] Article 10 of the CBA regarding seniority is silent as to whether the probationary period started only after being hired for "regular employment."

Duro Bag specifically include breach of contract.  *See Complaint*, Count III.  However, to the extent that Plaintiff alleges that either IBT or Duro Bag breached any contractual duty under the Labor Agreement, Plaintiff's claims are preempted by §301 of the Labor Management Relations Act ("LMRA").  29 U.S.C. §185(a).  *See United Steelworkers of America v. Rawson*, 495 U.S. 362 (1990); *see also Karr v. Central States*, 215 F.3d 1326, 2000 WL 659593 (6th Cir. May 11, 2000)(unpublished, text available on Westlaw).

Plaintiff's claims constitute a hybrid suit, in that they appear to include a §301 claim against Duro Bag coupled with a duty-of-fair representation claim against IBT.  In order to prevail, plaintiff must establish both that the union breached its duty of fair representation and that the employer breached the CBA.  *Clayton v . Int'l Union Untied Auto, Aerospace and Agricultural Implement Workers of America*, 451 U.S. 679 (1981).  A breach of the duty of fair representation can be demonstrated "only when a union's conduct....is arbitrary, discriminatory, or in bad faith."  *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational."  *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)(citations omitted).   However, in this case Plaintiff fails to allege that IBT engaged in any conduct that could be called "arbitrary, discriminatory, or in bad faith."  Thus, Plaintiff's allegations appear insufficient to state even a construed hybrid claim under the LMRA.

In addition, unlike claims brought under ERISA which contains a longer limitations period, a hybrid claim  under the LMRA is subject to a six-month statute of limitations.  29 U.S.C. §160(b); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169-72 (1983).  To the extent that Plaintiff alleges that either IBT or Duro Bag breached contractual duties, Plaintiff's claim is time-barred because Plaintiff knew or should have known of the status of his pension credits for

1976 and 1977 at the latest by December 1986, when he received a letter from the Fund that informed him that he did not become a participant until November 1977.  Even if Plaintiff were to argue that the December 1986 letter did not put him on sufficient notice of his claim, the record is incontroverable that Plaintiff was aware of the deficiencies in his credited service (and sought correction) from 2001-2007.  At the very latest, he was made aware of his claims when the Trustees last denied his request for reconsideration on February 13, 2007.  Under any conceivable construction, the six-month statute of limitations for claims within the scope of the LMRA had long since expired by the time Plaintiff filed this suit on August 7, 2009.

### B.  STANDARD OF REVIEW FOR ERISA CLAIMS

Most if not all of Plaintiff's claims fall squarely under ERISA because they relate to his employee benefit plan.  Plaintiff's complaint alleges (albeit incorrectly) that "administration and operation of the Plan is *jointly* performed" by all three named defendants, and that each of the three Defendants are "administrators and fiduciaries under ERISA." (Emphasis added). The record reflects that the Trustees of Central States acted as the administrator of the Plan.  (Doc. 16, Ex 1A at 15-16).

The Sixth Circuit has established guidelines to be used to adjudicate an ERISA benefits case, which state that a district court should, based solely on the administrative record, perform an analysis of the evidentiary material contained in the administrative record.  *Wilkins v. Baptist Healthcare Sys., Inc*., 150 F.3d at 619.[5]  The guidelines will be used when applying an arbitrary and

---

[5] In an ERISA benefits case, a court will not allow discovery because the court's review is limited to the administrative record available to the decision-makers at the time of the final decision.  *Id*. at 619.  The only exception allowing evidence outside the administrative record is to support a procedural challenge to the administrator's decision, such as an alleged lack of due process.  *Id.*  Additionally, a claimant cannot obtain discovery beyond the administrative record - even if limited to a procedural challenge-merely by alleging a procedural violation.  *Likas v. Life Ins. Co. of North Am.*, 222 Fed.Appx. 481, 486 (6th Cir. 2007); *Putney v. Med. Mut. of Ohio*, 111 Fed. Appx. 803, 807 (6th Cir. 2004).

capricious standard of review. *Marchetti v. Sun Life Assurance Co. of Canada*, 30 F.Supp.2d 1001

(M.D. Tenn. 1998). Under an application of the guidelines, this Court need only determine whether

the Trustees were arbitrary and capricious when they made their decision based on the

administrative record. "Stated differently, when it is possible to offer a reasoned explanation, based

on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v.

Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).[6]

## C. CENTRAL STATES' DECISION NOT ARBITRARY AND CAPRICIOUS

The relevant portions of the 1976 CBA state that:

Article 9 - Pension

"(a) Effective on the dates set forth below, the Company agrees to make the following contributions to the Central States, Southeast and Southwest Area Pension Fund, a jointly administered trust fund, for the purpose of providing pension benefits for each regular seniority employee covered by this agreement, excluding extra, casual, temporary and part-time employees."
Article 10 - Seniority
"(1) Newly hired drivers must work thirty (30) cumulative work days within any ninety (90) calendar day period before being considered a regular employee. Upon completion of such period of time such employee's seniority date shall revert back to his first day worked during such ninety (90) day period."

Plaintiff's payroll records state that he was hired on June 2, 1976 as a "Truck Driver

(casual)." (Doc. 16, Ex. D at 122). Both the pension and health and welfare contribution articles

of the CBA specifically exclude casual employees from a contribution obligation. (*Id*. at 27-28).

Central States claims that until Plaintiff was promoted to a "regular driver" in May of 1977, he was

never eligible to begin the probationary period with the purpose of obtaining seniority.

Article 10(1) of the CBA defines who is eligible to become a "regular employee" and when

---

[6] Plaintiff argues that the *de novo* standard of review is the appropriate standard because the principal issue is Central States' interpretation of the CBA. However, as discussed herein, the *de novo* standard of review is inapplicable in the instant case.

said individual becomes a "regular employee."  The plain language of the provision requires that "newly hired drivers" become "regular employees" if said "newly hired drivers" work thirty cumulative work days within any ninety calendar day period.  Plaintiff worked for Duro Bag for 33 days between June 1976 and July 1976.  Plaintiff claims that under the CBA a newly hired driver, regardless of the original status of said driver, would become a "regular employee" (thus eligible for pension contributions) upon completion of the "30 in 90" time period, and therefore he should have been considered a "regular employee" in July 1976.  The plain language of the term "newly hired drivers" does not distinguish between regular and casual employees.  Plaintiff claims that if the term "newly hired drivers" was only construed to apply to "regular employees," then said regular employees would have to complete the above referenced probationary period in order to be considered regular employees.

The CBA does not contain any explanation of what constitutes a "full time" or "casual" employee.  Additionally, the CBA does not explain whether a "newly hired" truck driver can be both a "casual" or "full time" employee, or only a "full time" employee.  Therefore, the undersigned finds that the terms of the CBA are ambiguous and it is unclear from the plain language of the Plan when Plaintiff should have been considered a "regular employee" entitled to pension benefits.

It is a general rule of contract interpretation that the court must adhere to the plain language of the contract as it would be construed by an ordinary person.  *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).  The question of whether an ERISA plan's language is straightforward or ambiguous is a question of law.  *In re Unisys Corp. Long-term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir. 1996).

Under the rule of *contra proferentem*[7], where contract terms are ambiguous, courts construe

_____

[7]  *Contra proferentum* or "against the offeror," is a common law rule of contract construction.

ambiguities against the drafter, or in this context, the trustees. *Bush v. Metro. Life Ins. Co.*, 656 F.2d 231, 233 (6th Cir. 1981). *See also Univ. Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000) (applying *contra proferentum* to ERISA contract).[8] However, "while the application of the *contra proferentem* rule of construction may be quite appropriate under a *de novo* standard, it is inconsistent with a deferential review standard under which the plan administrator is given wide latitude to interpret plan language, as in the instant case." *Peach v. Ultramar Diamond Shamrock*, 229 F. Supp. 2d 759, 766 (E.D. Mich. 2002) (citing *Morton v. Smith*, 91 F.3d 867, 871 n.1 (7th Cir. 1996)).[9]

> "When the administrators of a plan have discretionary authority to construe the plan, they have the discretion to determine the intended meaning of the plan's terms. In making a deferential review of such determinations, courts have no occasion to employ the rule of *contra proferentem*. Deferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry - the construction of someone else's construction."

*Morton*, 91 F.3d at 871 n.1.

For example, in *Cook v. Pension Plan for Salaried Employees of Cyclops Corp*, 801 F.2d 865 (6th Cir. 1986), *abrogated in part by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) the Court stressed the extent to which an administrator's construction of an ambiguous term in a plan must be respected. In *Cook*, employees applied for benefits under a pension plan but were ruled ineligible by the plan's administrators. The administrative decision hinged on the interpretation of

---

[8] The Court in *University Hospitals*, however, never actually applied the rule of *contra proferentem*; the statement was *obiter dictum*, not establishing binding precedent. *Ohio Co. v. Nemecek*, 98 F.3d 234, 238 (6th Cir. 1996) (noting that subsequent panels are not bound by previous panel's recognition of a possible exception to a rule when that exception was not at issue in that case).

[9] *See also Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995) (the Sixth Circuit has made clear that it "grants plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms.").

the word "discharge." The district court ruled that the administrators had ignored the plain meaning of this word and found the decision to be arbitrary and capricious. *Id*. at 866. The Sixth Circuit reversed, noting that the language of the plan was not altogether clear and that "under such circumstances, the deference to be accorded the [Pension] Board in the administration of its plan requires the court to stay its hand in the interest of efficient pension administration." *Id*. at 871.[10]

Similarly, this Court finds that the language of the Plan is unclear, but pursuant to Sixth Circuit precedent, *contra proferentem* is not a rule of construction that is applicable to the Plan, which is reviewed under an arbitrary and capricious standard. *See also Firestone*, 489 U.S. at 115. The Trustees' construction of the ambiguous language must be respected. *Cook*, 801 F.2d at 866.[11]

Additionally, Central States presents extrinsic evidence which supports the Trustees' finding that Plaintiff is not entitled to additional contributory credit under the Plan. For example, Plaintiff's payroll records indicate an effective hire date of June 2, 1976 as a casual driver and that he began full time work on May 27, 1977. (*Id*., Ex. F). Defendants argue that if Plaintiff gained seniority status by July of 1976, he failed to explain how Duro Bag added four new regular seniority drivers during the period that he did not work (August 1976 through December 1976). Central States also point out that Plaintiff failed to explain why he worked so little from January through June of 1977.

_____

[10] The Sixth Circuit also addressed this issue to some extent in *Parker v. Metro. Life Ins. Co.*, 99 F.3d 181 (6th Cir. 1996). The *Parker* court upheld the plan administrator's termination of disability benefits to the plaintiff. In applying the highly deferential arbitrary and capricious standard of review, the Sixth Circuit affirmed the district court's finding that the plan administrator's decision was rational. *Id*. at 185. Importantly, the court noted that "[i]f the standard of review were *de novo*, perhaps there would be a genuine issue of material fact." *Id.*

[11] This Court is not without sympathy for plaintiff's predicament. The language of the Plan is clearly ambiguous and Plaintiff is seeking only .4 of a year in additional time necessary to entitle him to an additional $1,000 per month in retirement benefits for life. However, Sixth Circuit case law clearly establishes that pursuant to the arbitrary and capricious standard, the plan administrators (the Trustees in the instant case) are the judge, jury, and executioner.

-24-

(*Id.*)  The facts that four employees were hired in violation of Plaintiff's alleged seniority rights in 1976 and that Plaintiff performed little work at Duro Bag prior to June of 1977 are inconsistent with the attainment of seniority rights.  However, they are consistent with being a casual employee.[12]

Plaintiff claims that his social security records support the fact that he was a regular employee.  The wage rate in the CBA for the relevant period of time was $7.70 per hour for full-time drivers.  (Doc. 16, Ex. D at 127, 140).  Plaintiff earned $2,050 in the second and third quarters of 2006.  (*Id*. at 69).  However, his conclusion that he was paid pursuant to the CBA for the second and third quarters of 1976 is flawed.  A correct calculation shows that Plaintiff was not paid the $7.70 rate in the CBA for regular seniority drivers in 1976.  He was actually paid about $6.40 per hour. Along with the payroll card is a calculator tape which shows eight weeks of payments in June and July of 1976, which total $2,050.70.  (*Id*. at 93).  If Plaintiff had been paid the $7.70 rate required by the CBA for regular drivers, he would have been paid $7.70 x 40 (the CBA contained a 40 hour guarantee for regular drivers) x 8 weeks, which would require a total payment to him of $2,464.00. Therefore, he was paid substantially less than what the CBA required for regular seniority drivers.

---

[12]  Plaintiff argues that he would not have any reason to suspect Defendant Duro Bag failed to properly provide contributions prior to November 1977 based on, for example, an August 17, 2005 correspondence stating that "Larry Lewis would have completed his probationary period by the end of July 1976, since he worked 8 weeks."  (Doc. 16, Ex. D at 76).  Duro Bag reiterated this position in January 2007 by stating that "Larry Lewis began paying union dues in 1976 when he had completed his probationary period in July and became a member of the Union.  He returned from layoff in May 1977."  (*Id*. at 12).  However, it is important to highlight that the correspondence states that Plaintiff "<u>would have</u> completed his probationary period" by July 1976 and that Plaintiff "began paying union dues in 1976 when he had completed his probationary period in July and <u>became a member of the Union</u>."  (*Id*. at 11, 74) (emphasis added).  The correspondence does not discuss Plaintiff's eligibility to participate in the Fund, does not indicate that he in fact completed his probationary period (or whether the probationary period was to become a union member or a "regular employee"), nor does it address the plain language of the contract that casual drivers were not eligible to participate in the Fund.

-25-

The same analysis applies to 1977.  The payroll card shows that Plaintiff did not become a full-time driver until May 25, 1977.  (Doc. 16, Ex. D at 92).  The calculator tape shows that he was paid the three weeks in January of 1977, in the amount of $764.50.  (*Id*. at 69, 93).  However, if Plaintiff had been paid as a regular driver for the first quarter of 1977, he would have been paid $7.70 x 40 (the 40 hour guarantee in the CBA) x 3 weeks, for a total of $924.00, but he was only paid $764.50.  On the portion of the payroll card showing his "Eff Date" and "Job Assignment", it says "Full Time Road Driver" effective May 25, 1977.  In the "comments" portion of the payroll card, it says "full time May 25-77" and "Road Driver."  (*Id*. at 92).  The fact that Duro Bag did not pay contributions for him until November of 1977 is consistent with the probationary clause in the CBA.  If he was promoted to full-time regular seniority employee status in October of 1977, contributions would be required for him by November of 1977, which is when they began.  Plaintiff's attainment of full-time status on May 25, 1977, as is shown by the payroll card, is consistent not only with his Social Security records, but also with the statement made by Donna Krebs on August 14, 2001 that Plaintiff was hired by Duro Bag on June 2, 1976 as a casual truck driver.  "On May 25, 1977, he became a full-time over-the-road truck driver."  (*Id*. at 122).

The administrative record, therefore, provides a reasonable basis for the Trustees' decision: (1) Plaintiff was hired in June of 1976 as a casual driver and Duro Bag was not obligated to make Fund contributions for casual employees (Doc. 16, Ex. D at 128);      (2) Plaintiff did not become a full-time or "regular" driver until May 25, 1977 (*Id*. at 92); (3) Plaintiff did not become eligible for the Fund until October 30, 1977 (the date of his first recorded contribution) because he did not work 30 days in a 90-day period until some time during the third quarter of 1977 (*Id*. at 100, 128); (4) Plaintiff's social security records showed no wages for the first or fourth quarter of 1976; (5) Plaintiff's wages for the first two quarters of 1977 are not consistent full-time employment; and (6)

Duro Bag hired new employees during the fourth quarter of 1976 (when Plaintiff supposedly had seniority status).[13]

Accordingly, based on this Court's exhaustive review of the administrative record, the Trustees were not arbitrary and capricious when they denied Plaintiff's claim for additional contributory credit under the Plan. Therefore, Plaintiff is not entitled to relief from this court on any of his claims.[14]

### IV.    CONCLUSION

Based on the forgoing, the undersigned hereby **RECOMMENDS** that:

1.    Defendant Central States' motion for judgment on the pleadings (Doc. 16) be **GRANTED**;


2.    Plaintiff's motion to set aside the administrative decision (Doc. 24) be **DENIED**;

3.    Defendant Duro Bag's motion to dismiss (Doc. 25) be **DENIED** as **MOOT**;

4.    Defendant IBT's motion for summary judgment (Doc. 32) be **GRANTED IN PART**

---

[13]  Of 19 employees reported by Duro Bag for pension contributions from September 1976 to January 1977, 18 had continuous contributions through January of 1977; one was terminated October 31, 1976.  Duro Bag added four new employees inthe fourth quarter of 1976.  (Doc. 16, Ex. D at 7, 16).

[14]Duro Bag argues that plaintiff's ERISA claims against it are also barred by the three-year statute of limitations applicable to such claims.  IBT further argues that it cannot be held liable because it is not a "fiduciary" under ERISA. In addition, IBT notes that only the Local Union No. 100 and not IBT was a party to the 1976 Duro Bag contract, such that IBT cannot be held liable for any breach.  Because the relief sought by plaintiff is so clearly barred on other grounds, the court has not examined these additional arguments.

to the extent that plaintiff's breach of contract claims are preempted by the LMRA and barred by

the statute of limitations, but otherwise DENIED AS MOOT;

and

5   This case be closed.


**IT IS SO RECOMMENDED**.

**June 24, 2010**                                     s/J. Gregory Wehrman
DATE                                                 J. Gregory Wehrman
                                                     United States Magistrate Judge


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


LARRY W. LEWIS,                          :      Case No. 09-cv-569
                                         :

|  |  |  |
|---|---|---|
| Plaintiff, | : | Chief Judge Susan J. Dlott |
|  | : | Magistrate Judge J. Gregory Wehrman |
| vs. | : |  |
|  | : |  |
| CENTRAL STATES, SOUTHEAST AND | : |  |
| SOUTHWEST AREAS PENSION | : |  |
| FUND, *et al*., | : |  |
|  | : |  |
| Defendants. | : |  |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).